# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**KATTIE M. HOWELL**   **PLAINTIFF**

**V.**   **CASE NO. 3:09CV20**

**ASHLEY FURNITURE INDUSTRIES,**
**INC. AND SIRJO CARREON**   **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the motion **[31]** of Defendants, Ashley Furniture and Sergio Carreon, seeking summary judgment, pursuant to FED. R. CIV. P. 12 and 56. Plaintiff Kattie Howell has responded in opposition to the motion, and the court having considered the submissions of the parties, finds that the motion should be granted.

Kattie Howell, a sixty-four year-old African-American female, began working with Ashley Furniture on October 4, 2004 as a member of the Poly Department's first shift. Ashley transferred Howell to the second shift at her request. Sergio Carreon, a Hispanic male, was the production manger of the second shift, with Denise Hitchcock, a Caucasian female, serving as Howell's immediate supervisor.

Howell worked on the glue line with Mary Souter, an African-American female. These two employees were required to find additional work at other stations when their work was completed. Carreon allegedly continuously questioned Howell as to her comings and goings. On May 3, 2007, Carreon approached Howell regarding the cleanliness of her work area, and the conversation became heated. Howell claims Carreon told her that she would clean the area or he would "fire [her] black ass." Carreon requested that Howell come to his office, but she accused

him of having a racial motive.  The two then met with the Human Resources Supervisor, who noticed Howell was extremely upset and informed her that she was not receiving a reprimand and to return to work.  Howell did not appear to show signs of physical distress when she left the office.  However, several minutes later Howell suffered a heart attack and was ultimately placed on life support before being discharged a few days later.

Ashley Furniture granted Howell leave under the Family Medical Leave Act and when that expired after several extensions, Ashley granted the maximum leave under its policy.  Howell was found to have a history of chronic heart failure, among other illnesses.  However, she returned to work in September, but could no longer physically handle the work and voluntarily left her position a few weeks later.

Subsequently, Howell filed the instant action alleging violation of her rights under 42 U.S.C. § 1981 against Ashley Furniture and Carreon.  Plaintiff has also alleged malicious interference with employment against individual Defendant Carreon.  Both defendants have moved for summary judgment on all claims.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).  An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986).  In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence.  *Reeves*

*v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110.

Claims of racial discrimination are governed by the evidentiary standard adopted in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff has the initial burden of making a *prima facie* case. *Id*. at 802. Once the plaintiff has established a *prima facie* case the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Id*. at 802-03. If the defendant is able to articulate a legitimate reason for its action the ultimate burden rests on the plaintiff to prove the employment decision was the result of a discriminatory practice. *Id*. at 804.

A plaintiff may make a *prima facie* case for direct discrimination by showing that: (1) she is a member of a protected class; (2) she sought and was qualified for the position in question; (3) she was denied or discharged from that position or suffered some adverse employment action; and, (4) a person outside her protected class and with similar qualifications was treated more favorably. *Id*. at 802.

A *prima facie* case of retaliation requires a plaintiff show:

> (1) she participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

All *prima facie* cases of discrimination require an adverse employment action. *McCoy*, 492 F.3d at 557 (citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003); *Fierros v. Tex. Dep't of Health*, 274 F.3d 187 (5th Cir. 2001)). The phrase adverse employment action can mean a number of things. "Without endorsing the specific results" of all the cases on tangible employment actions within the Circuits, the Supreme Court summarized the law of the Circuits writing:

> A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (6th Cir. 1996); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir. 1994); *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Howell does not assert any type of adverse employment action taken by the Defendants. In fact, Howell was granted twelve weeks of leave in addition to personal leave, and was not denied any benefit. Howell even returned to work for a brief time at Ashley's request, but voluntarily left after no longer being able to physically handle the work. Further, Howell cannot show a similarly situated employee outside her protected class who was treated more favorably by the Defendants. Employees who have different work responsibilities are not similarly situated. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). The only employees Howell points to in establishing a favored group are Hispanic workers who held positions dissimilar to her own. In fact, the only other employee who shared Howell's work

4

responsibilities was Mary Souter, who admittedly was treated more favorably than Howell, but is herself a member of Plaintiff's protected class. Thus, this claim fails as a matter of law as to both Ashley Furniture and Carreon and this portion of the motion will be granted.

Plaintiff argues in her response to this motion that she is entitled to pursue her Title VII claim based on racial harassment that created a hostile work environment. This court will assume that Plaintiff's complaint properly pleads this claim. Plaintiff must prove: (1) she belongs to protected group; (2) she was subjected to unwelcome harassment; (3) harassment complained of was based on race; (4) harassment complained of affected term, condition, or privilege of employment; (5) employer knew or should have known of harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

Plaintiff, an African-American female, clearly belongs to a protected group. She also asserted that Carreon threatened to "fire her black ass," which could certainly be interpreted as a racial slur. However, a mere single utterance of this nature is not enough for Plaintiff to establish severe and pervasive harassment needed for her hostile work environment claim. *Id*. at 268; *Rogers v. EEOC*, 454 F.2d 234. 238 (5th Cir. 1971). Plaintiff's other alleged harassment, while unwelcome to her, was not decidedly racially-based. Rather, Howell stated Carreon continuously questioned her as to what she doing, and where she was going. Simply asking Plaintiff's whereabouts and comings and goings on a frequent basis does not give rise to the level of hostility needed to prevail on this claim. This is especially true given the fact that Plaintiff's work responsibilities included moving around from station to station looking for tasks, and Carreon was Howell's overseer who was responsible for holding her accountable. Thus, Plaintiff

5

cannot establish a hostile work environment and Defendants' motion will be granted as to this claim.

Defendant Carreon also moves for summary judgment on Plaintiff's malicious interference with employment claim. To establish this claim, Plaintiff must prove the acts in question (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss. *Morrison v. Mississippi Enter. For Tech.*, 798 So. 2d 567, 575 (Miss. Ct. App. 2001). Plaintiff has alleged that Carreon threatened to terminate her. She also claims that she suffered a heart attack as a result and that this injury caused her to become unable to continue her employment at Ashley. However, Plaintiff was suffering from a heart condition at the time of the altercation, and there is no evidence that this threat caused her attack.

It is undisputed that Carreon was unaware of Plaintiff's heart condition, thus he could hardly have calculated that a verbal altercation would lead to this injury and cause Plaintiff to eventually have to leave her employment. Further, there is no evidence that Carreon intended for Plaintiff to suffer actual loss related to her employment. Carreon did make a threat to fire Plaintiff, but was certainly able to do so if he wished. Instead, he and the Human Resources Specialist discussed with Plaintiff that she would not even receive a reprimand. Thus, there is no evidence that Carreon willfully intended to interfere with Plaintiff's employment nor that he did in fact interfere with her employment, as she was not terminated.

It is obvious that Plaintiff has suffered substantial physical injury; however, she simply cannot meet the required standard for her claims in order to show these are the causation of her

injury.

Defendants' motion **[31]** is **GRANTED**.

This the 17th day of September, 2010.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**